IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SEAN CRANFORD,

    *Plaintiff*,

    v.

TENNESSEE STEEL HAULERS,
INC. et al.

    *Defendants*.

Civil Action No. ELH-17-2768

## MEMORANDUM OPINION

Sean Cranford, plaintiff, filed suit against defendants Leslie Austin and Tennessee Steel Haulers, Inc. ("TSH") on September 18, 2017. *See* ECF 1 (Complaint). He alleges that on February 8, 2016, in Fairfax County, Virginia, Austin negligently operated a vehicle for TSH and collided with plaintiff's vehicle. *Id.* ¶¶ 5-7, 10-11. Cranford asserts one claim of negligence against Austin, one claim of vicarious liability against TSH, Austin's employer, and he seeks $1,000,000 in damages. *Id.* ¶¶ 5-11. Jurisdiction is premised on diversity of citizenship. *See* ECF 1 at 2; 28 U.S.C. § 1332.

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(2), claiming lack of personal jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(3), claiming improper venue. *See* ECF 4 ("Motion"). Cranford opposes the Motion. *See* ECF 7 (amended opposition); ECF 7-2 (legal memorandum) (collectively, "Opposition"). He argues that this Court has personal jurisdiction and that venue is proper. But, in the alternative, he requests a transfer to the Eastern District of Virginia. ECF 7-2. Defendants replied. *See* ECF 8 ("Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I conclude that this Court lacks personal jurisdiction and that venue is improper. Therefore, I shall transfer the case to the Eastern District of Virginia.

## I.  Background[1]

Cranford resides in Odenton, Maryland. ECF 1, ¶ 1.  Austin resides in Houston, Texas. *Id.* ¶ 2.  TSH "is a foreign corporation not registered with the State of Maryland," with its principal place of business in Tennessee. *Id.* ¶ 3, 10.

According to Cranford, on February 8, 2016, while Austin was an employee or agent of TSH, Austin negligently changed lanes and hit the side of Cranford's vehicle.  ECF 1, ¶¶ 5-7, 10-11.  Cranford claims that the accident occurred near an intersection in Fairfax County, Virginia. *Id.* ¶ 5.  He alleges, *inter alia*, that he suffered severe and permanent bodily injury as a result of the crash. *Id.* ¶ 8.  Plaintiff seeks judgment in the amount of $1,000,000. *Id.* at 3.

Plaintiff maintains that TSH "advertises itself as a national transportation company" and has "contracts for pick-ups and deliveries in the State of Maryland."  ECF 1, ¶ 3.  In his Opposition, plaintiff asserts that TSH's "website contains a section where drivers can look for potential freight opportunities."  ECF 7-2 at 4.  As an exhibit to the Opposition, plaintiff included an image of the website on November 17, 2017, showing that TSH listed two freight opportunities originating in Maryland that day.  ECF 7-3 at 1-2.  He also contends that "[o]ther dates have listed more and less routes originating and/or terminating in the State of Maryland."  ECF 7-2 at 4.

## II.  Legal Standard

### A.  Personal Jurisdiction

Defendants' Motion for lack of personal jurisdiction is predicated on Fed. R. Civ. P. 12(b)(2).  ECF 4 at 1.  Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the

---

[1] For the purposes of considering the Motion, this Court accepts the facts that plaintiff alleged in its Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014).

"[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016).  When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676.  In its discretion, a court may also permit discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).  However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2). *See generally* 5B C. Wright & A. Miller, *Federal Practice & Procedure* § 1351 at 274–313 (3d ed.) ("Wright & Miller").

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.  If the district court addresses the question of personal jurisdiction as a preliminary matter, it may rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see Grayson*, 816 F.3d at 268.  In that circumstance, the "plaintiff need only make 'a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge.'" *Grayson*, 816 F.3d at 268 (quoting *Combs*, 886 F.2d at 676).  "When determining whether a plaintiff has made the requisite *prima facie* showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson*,

816 F.3d at 268; *see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  But, "district courts are not required . . . to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n. 5 (4th Cir. 2005) (emphasis in original) (citation omitted).

### B.  Venue

Defendants claim venue is improper in Maryland, under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1391.  ECF 4 at 1.  In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate. *Bartholomew v. Virginia Chiropractors Association*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.*, 752 F. Supp. 2d 670, 679 (D. Md. 2010).

The court may hold an evidentiary hearing and "freely consider evidence outside the pleadings." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365-56 (4th Cir. 2012) ("On a motion to dismiss under Rule 12(b)(3), a court is permitted to consider evidence outside the pleadings."); *Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017) (same); *Convergence Mgmt. Assocs., Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016) (same).  However, if the court does not hold an

evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("*CareFirst*"). "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff." *Aggarao*, 675 F.3d at 366.

Because "'it is possible for venue to be proper in more than one judicial district,' the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *CareFirst Inc.*, 235 F. Supp. 3d. at 732 (quoting *Mitrano*, 377 F.3d at 405). And, in considering "whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano*, 377 F.3d at 406 (citation omitted). Instead, "it should review 'the entire sequence of events underlying the claim.'" *Id.*; *accord Taylor*, 2017 WL 1832206, at *1; *Callender*, 2016 WL 6662253, at *2.

## III. Discussion

### A. Personal Jurisdiction

Plaintiff's Opposition is not a model of clarity. In a subsection titled "*Venue is Proper in this Jurisdiction*," Cranford contends, ECF 7-2 at 2:

> As all parties are either citizens of the United States or corporate entities organized under its laws, there is no question that a federal court possesses personal jurisdiction over any party. In diversity cases, the law recognizes that a given federal jurisdiction may be called to adjudicate a dispute between parties in which the hosting state/jurisdiction may not have personal jurisdiction. Of course, there is still the question of venue in diversity cases.

Then, Cranford begins his venue analysis. ECF 7-2 at 2. In the midst of that analysis, plaintiff cites Maryland's long-arm statute and identifies the provisions that he believes confer

- 5 -

personal jurisdiction in this Court.  *See id.* at 4.  Plaintiff cites no case law in support of his personal jurisdiction claims, beyond drawing a distinction between the case at hand and one case that defendants cite in their Motion.  *See id.* at 5.  According to plaintiff, "it would be legally and ethically problematic to allege that [this Court] does not have personal jurisdiction . . . ."  *Id.* at 4.

Fed. R. Civ. P. 4(k)(1) authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *See Carefirst of Maryland, Inc.*, 334 F.3d at 396.  Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Id.*

### 1.  Maryland's Long-Arm Statute

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2017 Supp.), §§ 6-101 to 104 of the Courts & Judicial Proceedings Article.  ("C.J.")

Under C.J. § 6-103(a): "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action *arising from* any act enumerated in this section." (Emphasis added).  C.J. § 6-103(b) authorizes "personal jurisdiction over a person, who directly or by an agent":

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

- 6 -

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cranford contends that personal jurisdiction exists under C.J. §§ 6-103(b)(1), (2), and (4). ECF 7-2 at 5.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Trust Co.*, RDB-15-1963, 2016 WL 4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F2d 649 (4th Cir. 1985); *accord Mylan Laboratories,* 2 F.3d at 61.   Regarding the interaction between the long-arm statute and the Fourteenth Amendment, the Maryland Court of Appeals has stated: "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)); *see also Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996) (stating that "the two inquiries essentially become one"); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002).

"Maryland courts, of course, would not exercise jurisdiction over a non-resident defendant if it were inconsistent with due process," and they must "interpret the long-arm statute in light of the intent of the General Assembly to extend personal jurisdiction to the limits

permitted by the Due Process Clause." *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 130, 892 A.2d 479, 486-87 (2006). However, the Maryland Court of Appeals has clarified that the statutory analysis remains a requirement of the personal jurisdiction analysis. In *Mackey*, the court said, *id.* at 141 n.6, 892 A.2d at 493 n.6 (citations omitted):

> We stated recently in *Beyond v. Realtime* . . . that "the purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." We did not, of course, mean by this that it is now permissible to simply dispense with analysis under the long-arm statute . . . . Rather . . . we interpret the long-arm statute to the limits permitted by the Due Process Clause when we can do so consistently with the canons of statutory construction.

Since *Mackey*, the Maryland Court of Appeals has repeatedly affirmed that "determining whether a Maryland court may exercise personal jurisdiction over a foreign defendant requires a two-step analysis." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see also CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (stating that personal jurisdiction analysis "entails dual considerations"). First, the court considers "whether the requirements of Maryland's long-arm statute[] are satisfied." *CSR, Ltd v. Taylor*, 411 Md. 457, 472, 983 A.2d 492, 501 (2009) (citations omitted). Second, it considers "whether the exercise of personal jurisdiction comports with the requirements imposed by the Due Process Clause of the Fourteenth Amendment.[]" *Id.* at 473, 983 A.2d at 501 (citations omitted).

As indicated, C.J. § 6-103(b)(1) authorizes "personal jurisdiction over a person, who directly or by an agent . . . [t]ransacts any business or performs any character of work or service in the State." "Although a defendant need not engage in 'commerce or . . . transactions for profit,'[] 'Maryland courts have construed the phrase 'transacting business' narrowly, requiring, for example, significant negotiations or intentional advertising and selling in the forum state.'[]" *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 315 (D. Md.

2012) (citations omitted).   Thus, "several contacts related to the cause of action only tangentially" do not establish personal jurisdiction.  *Stisser v. SP Bancorp, Inc.*, 234 Md. App. 593, 630, 174 A.3d 405, 428 (2017).

Further, to "transact business" within the meaning of the long-arm statute, a defendant's action must have "culminated in 'purposeful activity' within Maryland."  *Swarey v. Stephenson*, 222 Md. App. 65, 99–100, 112 A.3d 534, 557 (2015).  And, it is worth reiterating that C.J. § 6-103(a) requires that the cause of action "*aris[e] from*" the purposeful activity in Maryland.  C.J. § 6-103(a) (emphasis added).  In other words, the plaintiff must "show[] some purposeful act in Maryland in relation to one or more of the elements of plaintiff's cause of action."  *Talegen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md. App. 663, 670, 657 A.2d 406, 409 (1995).

C.J. § 6–103(b)(2) authorizes "personal jurisdiction over a person, who directly or by an agent . . . [c]ontracts to supply goods, food, services, or manufactured products in the State."  As Judge Grimm of this Court said in *Rao v. Era Alaska Airlines*, 22 F. Supp. 3d 529 (D. Md. 2014), § 6-103(b)(2) "covers only contracts to supply goods and services *in* Maryland, irrespective of where the contract was negotiated."  *Id.* at 535 (emphasis in *Rao*); *see also A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 795 F. Supp. 2d 365, 370 (D. Md. 2011) (section 6-103(b)(2) "covers contracts that offer 'to supply goods, food, services, or manufactured products in the State,' . . . regardless of whether the contract itself was negotiated outside of Maryland.")

As discussed, Cranford claims that personal jurisdiction exists under C.J. §§ 6-103(b)(1), (2), and (4).  ECF 7-2 at 5.  In support, he asserts that on at least some days during the year, TSH has listings for freight opportunities that begin in Maryland.  *Id.* at 4.  Cranford also opines that "numerous other freight paths advertised would have reasonably required drivers/haulers to pass through the State of Maryland (e.g., Virginia to Pennsylvania)."  *Id.* at 5.  And, he submits that

other grounds might provide the basis for personal jurisdiction, but that they "would only be known to any potential plaintiff after reasonable discovery and/or an evidentiary hearing."  *Id.*  These include whether TSH owns any real property in Maryland and whether it self-insures its drivers, which plaintiff contends would trigger C.J. §§ 6-103(b)(5) and (6), respectively.  *Id.*

Simply put, Cranford does not allege any facts in the Complaint that form the basis for personal jurisdiction in Maryland under § 6-103(b)(1).  Every alleged negligent act occurred in Virginia.  *See* ECF 1 at 2.  To be sure, as Cranford points out, "[t]here has been no discovery in this case," and "[i]t is entirely possible that the Defendant Austin was driving a payload to or from a location in the State of Maryland."  ECF 7-2 at 5.  However, even assuming that Austin was driving to or from Maryland, that conduct does not relate to any of "the elements" of plaintiff's negligence claim."  *Talegen Corp*, 104 Md. App. at 670, 657 A.2d at 409.  Any duty, breach, or injury caused by the defendants occurred "at th[e] time and place" of the accident, in Virginia.  *See* ECF 1, ¶¶ 6-7.  Thus, even if the route began or ended in Maryland, this cannot provide the basis for jurisdiction in Maryland under C.J. § 6-103(b)(1), because no negligence is alleged to have occurred here.

Additionally, Cranford "offers only speculation or conclusory assertions about contacts with [the] forum state."  *Carefirst of Maryland, Inc.*, 334 F.3d at 402.  This Court need not allow jurisdictional discovery in light of mere speculation.  *Id.* at 402-03 (concluding that it is proper to deny jurisdictional discovery "[w]hen a plaintiff offers only speculation or conclusory allegations" and when additional information would not change the outcome).

Cranford's reliance on C.J. § 6-103(b)(2) is also unavailing.  As noted, it confers personal jurisdiction over a person who "[c]ontracts to supply goods, food, services, or manufactured products in the State."  *Id.*  This section is understood to "relat[e] only to contract actions."

*Tech. Patents, LLC v. Deutsche Telekom AG*, 573 F. Supp. 2d 903, 911 (D. Md. 2008), *aff'd sub nom. Tech. Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482 (Fed. Cir. 2012); *see also McLaughlin v. Copeland*, 435 F. Supp. 513, 529 (D. Md. 1977) ("Subsection (b)(2), by its terms, relates only to contract actions . . . .").

Here, suit arises from negligence based on Austin's actions in Virginia on behalf of TSH. *See* ECF 1 at 1-3.  Cranford does not allege any contractual relationship with defendants.

Cranford also relies on C.J. § 6-103(b)(4).  It confers personal jurisdiction if the defendant "causes tortious injury . . . by an act . . . outside the State" if the defendant "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactures products used or consumed in the State." *Id.*  This provision is somewhat akin to general jurisdiction.  *See Cong. Bank v. Potomac Educ. Found., Inc.*, PWG-13-889, 2014 WL 347632, at *5 (D. Md. Jan. 30, 2014) ("Jurisdiction under this subsection is, at a minimum, specific, but has been found by some judges to have the attributes of general jurisdiction.") (citing cases).  Nonetheless, it "'require[s] greater contacts that [sic] those necessary to establish jurisdiction under [other subsections of Maryland's long-arm statute].'"  *Metro. Reg'l Info. Sys.,* 888 F. Supp. 2d at 698 (quoting *American Ass'n of Blood Banks v. Bos. Paternity, LLC,* 2009 WL 2366175, at *8 (D. Md. July 28, 2009)) (alterations added).

Because I conclude, *infra*, that the requisite contacts to satisfy general jurisdiction are not alleged, Cranford fails to establish a prima facie case for personal jurisdiction under this provision.

Plaintiff also suggests that personal jurisdiction might lie under C.J. § 6-103(b)(5), "if [TSH] owns, leases, or rents and real property" in Maryland.  ECF 7-2 at 5.  As discussed above,

conclusory statements are insufficient.  *See Carefirst of Maryland, Inc.*, 334 F.3d at 402. Moreover, for this Court to exercise personal jurisdiction under § 6-103(b)(5), the cause of action must arise from an interest in real property in Maryland, and this negligent driving claim clearly does not.  *See Cappel v. Riaso, LLC.*, 197 Md. App. 347, 357, 13 A.3d 823, 829 (2011) (holding that the cause of action must relate to the interest in real property to provide personal jurisdiction).

Similarly, plaintiff speculates that jurisdiction could lie under § 6-103(b)(6) "depending if [TSH] self-insures its drivers."  ECF 7-2 at 5.  Section 6-103(b)(6) "is a specialized subsection relating to insuror and surety relationships."  *McLaughlin v. Copeland*, 435 F. Supp. 513, 529 (D. Md. 1977).  Again, pursuant to § 6-103(a), the cause of action must arise out of the contract to insure.  C.J. § 6-103(a).  Because the claim here does not arise out of a contract to insure, § 6-103(b)(6) cannot be the basis for personal jurisdiction here.

## 2.  The Due Process Clause

The Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Courts have separated this test into individual "prongs," first ascertaining whether the threshold of "minimum contacts" is met, and then considering whether the exercise of jurisdiction on the basis of those contacts is "constitutionally reasonable."  *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Due process jurisprudence recognizes "two types of personal jurisdiction: general and specific."  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India,* 551 F.3d 285, 292 n.15 (4th Cir.

2009).  General jurisdiction requires a more demanding showing of 'continuous and systematic' activities in the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan*, 293 F.3d at 712).  But, "'[i]f the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction.'" *Tire Eng'g*, 682 F.3d at 301 (quoting *ALS Scan*, 293 F.3d at 712).

Notably, "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).  In *Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014), the Supreme Court made clear that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  In particular, it said: "[T]he inquiry. . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* at 138-39 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (U.S. 2011)) (alteration in original).

"With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (bracket in *Daimler*) (citation omitted).  Although the *Daimler* Court acknowledged that the principal place of business and place of incorporation are not the *only* places in which a corporation may be considered "at home," it emphasized that "[t]hose affiliations have the virtue of being unique— that is, each ordinarily indicates only one place," and it declined to extend general personal jurisdiction based on activities that would render the corporation subject to adjudication in "every other State in which [the corporation's] sales are sizable." 571 U.S. at 137-39.

- 13 -

Illustrative of the standard is the Supreme Court's recent decision in *BNSF Ry. Co. v. Tyrrell*, ___ U.S. ___, 137 S. Ct. 1549 (2017). There, the plaintiffs sued a railroad in a Montana state court for injuries sustained outside of Montana, and the railroad moved to dismiss the case for lack of personal jurisdiction. *Id.* at 1553-54. The Court invoked *Goodyear*, 564 U.S. 915, and *Daimler*, 571 U.S. 117, in concluding that the Montana state court did not have personal jurisdiction over the railroad, despite the fact that the railroad operated over 2,000 miles of in-state track and had over 2,000 in-state employees. *BNSF*, 137 S. Ct. at 1559. "In-state business," it concluded, "does not suffice to permit the assertion of general jurisdiction over claims like [the plaintiffs'] that are unrelated to any activity occurring in Montana." *Id.* at 1559.

As to specific jurisdiction, the Fourth Circuit has formulated a three-part test for courts to use in determining whether there is such jurisdiction over a defendant. The three prongs are: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers*, 561 F.3d at 278 (citing *ALS Scan*, 293 F.3d at 715); *accord Carefirst of Maryland*, 334 F.3d at 397.

Cranford makes no allegations to support this Court's exercise of personal jurisdiction over Austin, either general or specific. He concedes that Austin is a citizen of Texas. ECF 1, ¶ 2. Therefore, this Court lacks general personal jurisdiction. *See Milliken v. Meyer*, 311 U.S. 457, 462 (1940). He also fails to allege any action by Austin in Maryland that gave rise to plaintiff's negligence claim, failing at least the first two prongs of the specific personal jurisdiction test. *See Consulting Engineers*, 561 F.3d at 278.

- 14 -

In his Opposition, Cranford speculates that Austin's route may have originated or terminated in Maryland. But, he does not allege any basis for such conjecture, nor does he allege how it might provide specific personal jurisdiction for an accident that occurred in Virginia. *Id.* at 5. To the contrary, he concedes: "Plaintiff is addressing the 'general jurisdiction' portion of the Defendants' Motion. Without discovery, Plaintiff lacks information to determine whether there is 'specific jurisdiction' in the instant case." *Id.* at 5 n.1. However, even if discovery uncovered that Austin's route began or terminated in Maryland, his negligence claim does not "arise out of those activities directed at" Maryland. *Consulting Engineers*, 561 F.3d at 278. \

I turn to consider whether the Court has personal jurisdiction as to TSH. Plaintiff argues only that the Court has general jurisdiction as to TSH.[2] This is incorrect.

Plaintiff concedes that Maryland is neither the place of incorporation nor the principal place of business for TSH. *See* ECF 4 at 2. But, Cranford contends that the two freight opportunities on November 17, 2017, and the "more and less" than two listings reflecting routes originating or terminating in Maryland on "other days" over the course of an undetermined period of time, demonstrate that "Defendant TSH regularly transacts business in the State of Maryland." ECF 7-2 at 4-5. However, "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be *in some sense* 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so* continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 139 (2014) (quoting *Goodyear*, 564 U.S. at 919) (some internal quotations omitted) (emphasis added).

Cranford's allegations do not establish that TSH's Maryland contacts rise to the level of "at home." *See Goodyear*, 564 U.S. at 919. TSH cannot be subject to personal jurisdiction in

---

[2] Notably, any of plaintiff's arguments for specific personal jurisdiction over TSH would be identical to those for specific personal jurisdiction over Austin, and would be similarly unavailing.

"every . . . State in which [its] sales are sizable." *Daimler*, 571 U.S. at 137-39. Even if TSH operates in Maryland, it is not "so heavily engaged in activity" that it can be haled to court there for any and every claim against it. *BNSF*, 137 S. Ct. at 1559; *see also Lewis v. Park Plus, Inc.*, AW-13-1709, 2013 WL 6713224, at *4 (D. Md. Dec. 18, 2013) (rejecting general personal jurisdiction when plaintiff alleged that defendants installed and operated a parking facility in Maryland but offered no insight on whether the business was a "substantial part" of the defendant's "overall operations"); *Cf Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1783, 198 L. Ed. 2d 395 (2017) (finding no personal jurisdiction over a company despite its having hundreds of employees and selling over $900 million of one drug in the state over the six years prior to the suit).

The Court in *BNSF* emphasized that a corporation is "at home" only in its "place of incorporation and its principal place of business," unless there is an "exceptional case" that "render[s] the corporation at home" elsewhere. U.S., 137 S. Ct. at 1558 (internal quotations omitted). An "exceptional case," it continued, would be one such as *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), a case in which "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio," such that "Ohio then became 'the center of the corporation's wartime activities.'" *BNSF*, U.S., 137 S. Ct. at 1558 (construing *Perkins*, 342 U.S. 437) (quoting *Daimler*, 571 U.S. at 130 n.8). In that case, general personal jurisdiction was found in Ohio because the company's president moved to Ohio, conducted all decision making, management, and correspondence from his office in Ohio, and fully "discharged his duties as president and general manager" in Ohio. *Perkins*, 342 U.S. at 448. As the Supreme Court later highlighted, "Ohio could be considered 'a surrogate for the place of incorporation or head office.'" *Daimler*, 571 U.S. at 130 n.8 (quoting Arthur T. von

Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1144 (1966)).

Cranford's allegations do not come close to rising to the level of an "exceptional case." *BNSF*, 137 S. Ct. at 1558 (internal quotations omitted).  TSH's contacts do not rise to the level of rendering it at home in Maryland.  And, Cranford offers no argument that personal jurisdiction exists over Austin.  Therefore, I conclude that this Court lacks personal jurisdiction over either defendant.

### B. Venue

Fed. R. Civ. P. 12(b)(3) allows challenges to venue.  Section § 1391(b) of 28 U.S.C. provides that venue is proper in the following places, *id.*:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

In addition, § 1391(c)(2) is pertinent. It states, in part, *id.*:

[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . .

The three subsections in § 1391(b) are often referred to, respectively, as "residential venue," "transactional venue," and "fallback venue." Wright & Miller, 5B Federal Practice & Procedure § 1304. The first two subsections are "preferred judicial districts" for venue, while the third subsection provides a "fallback option . . . ." *Atlantic Marine Const. Co., Inc. v. U.S. Dist.*

- 17 -

*Court for Western Dist. of Texas*, 571 U.S. 49, 56 (2013). Thus, "if no other venue is proper, venue will lie in any judicial district in which any defendant is subject to the court's personal jurisdiction [under § 1391(b)(3)]."   *Id.* at 56-57.   (internal quotations and citation omitted) (emphasis omitted).

Venue is improper in Maryland.   At the outset, both parties agree that § 1391(b)(1) cannot be the basis for venue in Maryland because not all defendants reside in Maryland.   *See* ECF 4 at 11; ECF 7-2 at 2.

Cranford asserts that § 1391(b)(2) provides venue in Maryland because "[t]he Plaintiff's claim . . . concerns injuries and medical care arising from the motor vehicle collision," and he received medical care in Maryland.  ECF 7-2 at 3.  His argument mistates the events that provide the basis for venue.   Section 1391(b)(2) provides for venue where "a substantial part of the events . . . *giving rise to the claim* occurred," not where the medical care occurred *after those events* took place.  *See* § 1391(b)(2) (emphasis added).   "When considering transactional venue for torts cases, courts will generally consider both where the activities arose *and* where the harm was felt."  *Seidel v. Kirby*, 296 F. Supp. 3d 745, 752 (D. Md. 2017).  *See also Adhikari v. KBR, Inc.*, JCC 115-CV-1248, 2016 WL 4162012, at *5 (E.D. Va. Aug. 4, 2016) (stating that "courts' general practice in tort cases [is to] emphasiz[e] the location where the harm and the tortious acts occurred."); *Estate of Abtan v. Blackwater Lodge & Training Ctr.*, 611 F. Supp. 2d 1, 8 (D.D.C. 2009); 14D Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3806 (4th ed. 2016) ("In tort cases, courts tend to focus on where the allegedly tortious actions took place and where the harms were felt.").

Cranford alleges that Austin negligently operated his vehicle, and that TSH is vicariously liable for his negligent driving.  *See* ECF 1 at 2-3.  But, he alleges no "substantial event" in

Maryland that gave rise to the negligent driving.  *See Mitrano*, 377 F.3d at 406 (focusing on whether an event was a "substantial" enough to provide for venue in the forum where the event occurred); *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) (same).  The alleged negligent driving and the collision occurred in Fairfax County, Virginia.  ECF 1, ¶ 5. Fairfax County, Virginia, is located in the Eastern District of Virginia, not the District of Maryland, and that is where venue is proper under § 1391(b)(2).

Finally, § 1391(b)(3) provides for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to [the] action," but only "if there is no district in which an action may otherwise be brought."  Because the action may be brought in the Eastern District of Virginia pursuant to § 1391(b)(2), this third "fallback option" is inapplicable. *See Atlantic Marine*, 571 U.S. at 56-57.  Even so, as previously discussed, personal jurisdiction does not lie in the District of Maryland for either defendant, and so § 1391(b)(3) cannot be the basis for venue in this State.

## IV.  Transfer

In the absence of personal jurisdiction and venue in Maryland, plaintiff seeks a transfer of the case.  Defendants seek dismissal.  *See* ECF 4 at 11; ECF 7-2 at 6.

Section 1406 of Title 28 of the United States Code pertains to the "cure or waiver of defects" of venue.  *See Nichols*, 991 F.2d at 1201 n.4.  Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Section 1406 has been given an "expansive reading" and is interpreted to afford "broad remedial relief where there are impediments to an adjudication on the merits," including but not

limited to instances where venue is improper. *Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988). Thus, the Fourth Circuit interprets the statute to "authorize[] the transfer of a case to any district, which would have had venue if the case were originally brought there, for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Id.* at 258; s*ee also Sewell v. Commodity Futures Trading Comm'n*, PX-16-2457, 2017 WL 1196614, at *4 (D. Md. Mar. 31, 2017). (electing not to transfer a case because lack of subject matter jurisdiction made transfer futile).

"Whether a transfer would be in the interest of justice" is "committed to the discretion of the trial court." *Sewell*, PX-16-2457, 2017 WL 1196614, at *4. In determining whether transfer is in the interest of justice, courts have considered whether the statute of limitations has run since the commencement of the action; if the defendant has misled the plaintiff on facts relevant to venue; if transfer would be more efficient or economical than dismissal; and if plaintiff's belief that venue was proper was in good faith and reasonable. Wright & Miller, 5B Federal Practice & Procedure § 3827.

Courts in this district favor transfer over dismissal unless "plaintiff is harassing the defendants or acting in bad faith or forum shopping." *Ademiluyi v. Nat'l Bar Ass'n*, GJH-15-02947, 2016 WL 4705536, at *3 (D. Md. Sept. 8, 2016; *see also Gov't of Egypt Procurement Office v. M/V ROBERT E. LEE*, 216 F. Supp. 2d 468, 473 (D. Md. 2002) ("Courts generally favor transfer over dismissal, unless there is evidence that a case was brought in an improper venue in bad faith or to harass defendants . . . ."). Although a district court may deny transfer when the plaintiff's attorney has made an "obvious error" with regard to where venue may be proper, even then it is within the court's discretion. *See Nichols*, 991 F.2d at 1202, 1202 n.6 (affirming the district court's decision to dismiss, rather than transfer, but making clear that "a

- 20 -

district court would not necessarily err" in granting a motion to transfer when plaintiff's attorney made an obvious error).

Cranford requests transfer to the United States District Court for the Eastern District of Virginia, claiming that "[d]ismissing the case would result in additional, and unnecessary costs to the Plaintiff." ECF 7-2 at 6. Defendants, for their part, do not address the transfer request beyond seeking dismissal of the suit, with prejudice. ECF 8 at 5. In deciding whether transfer is appropriate, this Court must examine, without formally deciding, whether Cranford could bring his Complaint in the federal court in the Eastern District of Virginia. *See Porter*, 840 F.2d at 258 (transfer of a case is authorized "to any district, which would have had venue if the case were originally brought there").

It appears from the Complaint that the United States District Court in the Eastern District of Virginia has subject matter jurisdiction, based on diversity. In addition, the Eastern District of Virginia would have personal jurisdiction over both defendants.

Virginia's long-arm statute provides for personal jurisdiction over people who "[c]aus[e] tortious injury by an act or omission." Va. Code § 8.01-328.1(A)(4). And, due process would likely be satisfied. *See Consulting Engineers*, 561 F.3d at 278-79. The alleged negligent driving occurred in that state, satisfying the requirement that the defendants "'purposefully avail[ed]' themselves of the privilege of conducting activities in the forum" and that the "claim ar[o]se out of th[o]se activities." *Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 659 (E.D. Va. 2007) (citing *Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001)).

The location of the accident also makes Virginia a constitutionally reasonable forum for litigation because Virginia has an interest in adjudicating negligent driving claims that arise in-

- 21 -

state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (examining "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies" to determine reasonableness) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).  Although no party resides in Virginia, it will not "make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478 (citing *Bremen v. Zapate Off-Shore Co.*, 407 U.S. 1, 18 (1972); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223-24 (1957)).

Finally, as previously discussed, venue is proper in the Eastern District of Virginia because "a substantial part of the events or omissions giving rise to the claim occurred" there.  28 U.S.C. § 1391(b)(2).  It is in the interest of justice for plaintiff's allegations to be heard in a proper forum, without the additional expense of initiating a new case.  I am satisfied that transfer is warranted.

### IV.  Conclusion

Plaintiff has not made a prima facie showing that personal jurisdiction exists or that venue is proper in Maryland. However, because transfer, rather than dismissal, is in the interest of justice, I shall transfer the case to the Eastern District of Virginia.

An Order follows, consistent with this Memorandum Opinion.


Date:   July 20, 2018                                     _____/s/_____

                                                         Ellen L. Hollander
                                                         United States District Judge

- 22 -